HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES EVAN CRAWFORD,<br><br>Defendant. | CASE NO. CR16-5303RBL<br><br>ORDER |

THIS MATTER is before the Court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1). [Dkt. #138]. The Court has reviewed the materials filed for and against the motion. Oral argument is not necessary. For the following reasons, the motion is **DENIED**.

## I. PROCEDURAL HURDLES

**A. The Government Does Not Contest Exhaustion**

Mr. Crawford's BP-9 request was promptly denied. This result is in line with the fact that around the same time FCI Danbury had not granted any requests for compassionate release. In response, the government does <u>not</u> contend exhaustion is a hurdle to Mr. Crawford's release. The Court concludes the exhaustion requirement has been satisfied. *United States v. Martin*, No.

2:08-cr-00244, RSL-6, Dkt. 241 (Aug. 3, 2020) (finding exhaustion satisfied under the same circumstances).

**B. Because of a Pending Appeal of the Sentence, This Court Lacks Jurisdiction**

The defendant currently has an appeal pending before the Ninth Circuit challenging the sentence that he now seeks to reduce through an order from this Court. As the Ninth Circuit has observed, "[t]he filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Ortega-Lopez*, 988 F.2d 70, 72 (9th Cir. 1993) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 46, 58 (1982)) (internal quotation marks omitted). *Ortega-Lopez* addressed the district court jurisdiction to modify a sentence under Federal Rule of Criminal Procedure 35(b), and found jurisdiction to be lacking. But the same analysis hold true for a motion under 18 U.S.C. § 3582(c). Indeed, when it considered this question, the First Circuit has observed, "there is no basis for distinguishing between these two types of modifications for jurisdictional purposes." *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015).

Because this Court lacks jurisdiction, it cannot grant the reduction in sentence that the defendant seeks. At best, pursuant to Fed. R. Crim. P. 37, it can consider issuing an indicative ruling on Crawford's motion for compassionate release. Therefore, the Court writes the following indicative ruling on the motion.

## II. FACTS

**A. Procedural Posture**

Following a stipulated facts bench trial, the Defendant was convicted of a single count of Abusive Sexual Contact with a Minor Under 12 in violation 18 U.S.C. §§ 2244(a)(5), 2246(3) and 2247. At trial, the Defendant stipulated that, for his sexual gratification and while minor victim was in his custody and control, he touched the six-year-old victim's bare genitalia, caused victim to touch his bare penis, and placed his penis against the bare victim's bare genitalia and anus. *See* Stipulated Facts Trial Agreement (Dkt. No. 98) at 5. On February 11, 2020, the Defendant filed his Notice of Appeal, Dkt. No. 120, and this Court denied release pending appeal. Dkt. 127. As a result, Crawford is currently serving the 120 month sentence imposed by this Court on January 31, 2020. He is housed at FCI Danbury, and has a projected release date of September 8, 2028.

**B. Defendant's Condition**

The Defendant concedes that he "does not suffer from one of the medical vulnerabilities listed by the CDC." Defense Motion for Compassionate Relief (Dkt. No. 138) at 5. Instead, the Defendant roots his request for compassionate relief in his "cognitive limitations." *Id.* Specifically, the Defendant claims he will "have difficult complying" with COVID-19 mitigation measures that would both endanger the Defendant and other inmates. *Id.*[1]

In stark contrast to these alleged limitations, Dr. Lea Ann Baecht reached very different conclusions after observing the Defendant for several months during his competency restoration process. In addition to identifying certain malingering behaviors,

she noted that "without the assistance of his parents, he was surprisingly successful [in custody]…he was observed frequently with select peers and even entered into a talent contest where he and his partner won first prize." Although autistic, Dr. Baecht concluded he did "not meet the diagnostic criteria for an Intellectual Disorder." Particularly germane to the instant motion, Dr. Baecht observed that "correctional staff reported he easily followed the rules of his new [semi-unlocked housing] unit."

### III. ARGUMENT

**A. The Legal Standards for Compassionate Release**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle, Section 3582(c) provides that a court "may not modify a term of imprisonment once it has been imposed," with three exceptions, one of which is a motion under 18 U.S.C. § 3582(c)(1)(A). This statute provides a court with jurisdiction to reduce an otherwise final sentence where a defendant establishes: (1) the exhaustion requirements in the statute have been satisfied; (2) an extraordinary and compelling reason supports the motion; and (3) any reduction is consistent with the policy statement.

Congress directed the Sentencing Commission to draft the policy statement referenced in the statute in 28 U.S.C. § 994(f). That policy statement, found at USSG § 1B1.13, repeats the requirements contained in the statute, then directs that to reduce an otherwise final sentence, a court must find (1) that the defendant has presented an extraordinary and compelling reason for the reduction, (2) that the defendant does not present a danger to

others and the community, and (3) that the reduction be appropriate after considering the factors in 18 U.S.C. § 3553(a).

The application notes then describe what situations circumstances may constitute extraordinary and compelling reasons. These include:

(A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less

USSG § 1B1.13 cmt. n.1. Certain described family circumstances, or other reasons as determined by the Director of the Bureau of Prisons may also constitute extraordinary and compelling reasons. USSG § 1B1.13 cmt. n.1. The notes then acknowledge that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. §

3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." USSG § 1B1.13 cmt. n.4.

The policy statement referenced in § 3582(c)(1)(A), like that in 18 U.S.C. § 3582(c)(2), controls how this Court is to exercise of discretion. *Cf. Dillon v. United States*, 560 U.S. 817, 827 (2010). In *Dillon*, the Court held that the identical "policy statement" language contained in 18 U.S.C. § 3582(c)(2) was binding on a district court's exercise of discretion. *See Dillon*, 560 U.S. at 826. Because both subsections follow the same prefatory language of § 3582(c) and are parallel in nature, the policy statement in § 3582(c)(1)(A) is also binding.

The First Step Act amendment, which now permits a defendant to file such motions (instead of being limited to motions filed by Director of BOP), did not change the statutory standards for relief, or direct the Sentencing Commission to change or expand this policy statement. Therefore, the fact that USSG § 1B1.13 has not been amended after enactment of the First Step Act does not change its binding nature. *See United States v. Ebbers,* 432 F.Supp.3d 421, 427 (S.D.N.Y. Jan. 8, 2020). But regardless of whether it is considered binding, at a minimum, the policy statement provides guidance on what constitutes an extraordinary and compelling reason to disturb the finality of a sentence. *See, e.g., United States v. Wolfe,* 2020 WL 2615010 (S.D. In. May 22, 2020).

In summary, applying the statutory requirements, if the defendant has met the exhaustion requirements, before this Court may reduce the defendant's sentence, it first

ORDER - 6

must determine whether the defendant has provided are an extraordinary and compelling reason. If such a reason or reasons have been provided, this Court must then consider whether a reduction is appropriate in light of the factors in 18 U.S.C. § 3553(a) and any danger that the defendant might continue to present to another person or the community. Roche has not met this standard.

**B. The Defendant Has Not Met the Standard for a Reduction on Sentence as He Does Not Have a Medical Condition that Constitutes an "Extraordinary and Compelling Reason"**

After satisfying the exhaustion requirement, to be eligible for a district court's discretionary consideration of a reduced sentence under this provision, a defendant bears the burden to show "extraordinary and compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020).; *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). "In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Rather, "compassionate release . . . is an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020). This reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities. *Ebbers*, 432 F.Supp.3d at 430. Compassionate release is not a tool to "correct" a judgment. *Id.*

The Defendant concedes he does not present a qualifying medical condition. Rather, as he argued when pursuing incompetency and a reduced sentence, he once again tenders his cognitive limitations as an "extraordinary and compelling" justification. Unfortunately, the facts do not support the argument.

The Defendant does indeed suffer from autism that does generate certain social, learning and psychological limitations. However, this condition neither mitigated his ability to groom and rape the minor victim nor does it prevent him from following clear guidance from BOP authorities. Instead, the Defendant has proven to be extraordinarily compliant while in custody. Nevertheless, the Defendant has repeatedly attempted to weaponize his diagnosis to avoid accountability for his actions. The Court should reject this most recent, familiar but no less audacious attempt to exaggerate the Defendant's condition. Accordingly, the Defendant's autism simply does not meet the "extraordinary and compelling" threshold.

1. COVID-19 and the Bureau of Prisons

Much of the Defendant's motion is devoted to the possibility that he may become infected with COVID-19 while at the institution to justify release. While concerns about contracting COVID-19 are certainly understandable, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *United States v. Eberhart*, _ F.Supp.3d _, 2020 WL 1450745 at *2 (N.D. Cal. 2020). As courts have noted, the latter claim would apply to everyone in confinement and does not constitute extraordinary and compelling reasons. *See, e.g., United States v. Stanard*,

2020 WL 2219478 (W.D. Wa. May 7, 2020); *United States v. Espinal*, 2020 WL 2092484 (E.D. N.Y. May 1, 2020); *United States v. Fuentes*, 2020 WL 1937398 (E.D. Ca. Apr. 22, 2020).

His motion also identifies factors that make prison facilities susceptible to transmission of COVID-19. It is also true, however, that BOP is making every effort to combat the spread of this infectious disease. Although BOP facilities have experienced significant transmission of the disease through inmate populations, BOP has taken a substantial number of steps to prevent its spread and followed the guidance from the CDC and other health experts, altering practices as that guidance has changed throughout the pandemic.

First, the record demonstrates that BOP is using it legal authorities under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g), and Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 to reduce the number of inmates vulnerable to COVID-19 in his care. As of August 6, 2020, some 7,378 inmates have been transferred to home detention.

Second, throughout the pandemic, BOP has been actively attempting to protect the health of inmates and staff, adjusting continually to the changing guidance from health experts. The measures it has taken since March include screening incoming inmates; regular screening of staff; limiting contractor visits to essential services; suspending attorney, social, and volunteer visits; limiting inmate movements between facilities; and taking additional steps to modify operations to maximize social distancing such as staggering times for meals and recreation. It has ensured that cleaning and sanitation supplies are available and when it became clear that masks would help halt the spread, supplied these items to inmates and staff. The BOP also increased testing and locked

down facilities to halt any spread. The Director of BOP testified regarding these efforts before the Senate Judiciary Committee on June 2, 2020. All of these measures reduce the risk to the defendant while incarcerated.

As noted above, Defendant is serving his sentence at FCI Danbury which has suffered an outbreak of COVID-19 relatively early in the pandemic, but that outbreak appears to have been brought under control. As of August 6, 2020, of the total of 809 inmates at the facility, only one inmate is currently listed as having COVID-19 and 89 inmates are listed as recovered. Tragically, one inmate did die from the disease. The website also shows that some 898 inmates who are, or were, at this institution have been tested for the disease. Indeed, that is confirmed by Crawford's own medical records that show he was tested for the disease on May 20, 2020, and tested negative. *See* Exhibit A under seal at 19.

Defendant's motion does cite the on-going litigation regarding FCI Danbury and cites findings in an order dated May 12, 2020. But those conditions hardly reflect what has happened in the almost three months since that date. For example, the motion cites the inadequacies in testing but the current numbers are reflective of extensive testing of facility inmates. And it also fails to reflect that testing in this country as a whole is not as readily available as some might suggest and certainly is not universal. Moreover, since May, a substantial number of the most vulnerable inmates have been released to home confinement as reflected by the numbers cited above. The Court is aware of the Order in *United States v. Tionna Mitchell*, No. 17-20652, 2020 WL 4284311 (E.D. Mich. Jul. 27, 2020) but is not persuaded in this case.

In any event, release into the community does not guarantee that the defendant will be at a lesser risk for contracting COVID-19. Therefore, acknowledging that COVID-19 presents a health risk to everyone, including incarcerated individuals, there is no basis for concluding that the Defendant faces a significantly greater risk while in custody than what he would face in the community upon his release.

2. The § 3553(a) Factors Don't Support the Defendant's Release and the Defendant Has Failed to Establish He is No Longer a Danger

As noted above, the Defendant has not presented "extraordinary and compelling" reasons to reduce his sentence. That conclusion precludes a reduction in his sentence. Moreover, that conclusion is further supported by the application of the factors set out in § 3553(a). Those factors have not altered since the defendant's original sentencing. In short, the § 3553(a) factors do not support early release.

The government has long advocated for a lengthy custodial sentence in large part due to the threat the Defendant posed to the community and based upon the sentencing factors contained in 18 U.S.C. § 3553(a). *See* Dkt No. 110. This threat was driven largely by the Defendant's demonstrated sexualized interest in children, the enabling efforts of his parents to suppress such allegations, and his tendency to conceal this sexualized interest through exaggeration of his cognitive limitations. The Court expressly acknowledged this threat as significant, if not the primary, justification for a 120-month custodial sentence and *lifetime* supervision. Such a sentence is effectively a *per se* finding that the Defendant "pose[s] a danger to the safety of any other person or the community."

The Court's earlier determination that the Defendant poses a threat to the community prevents the Defendant from carrying his "extraordinary and compelling" burden. Accordingly the Defendant must not be released.

Further, this Court may not reduce defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13; *see also United States v. Gotti*, No. 02-cr-743-CM, 2020 WL 497987 (SDNY 2020) (finding that even if medically eligible, release was inappropriate because defendant poses a continuing danger to the public). Although the Defendant has no criminal history, that does not make his conviction an aberration. Indeed, he both raped a child and collected childrens' underwear, perhaps from the victim, in a container concealed in his bedroom closet. This may be the first time he was caught, but it is not the first time he has harbored sexualized interest for a child. Nor is the Defendant's criminal activity unusual. Sadly, it is all too common. The Defendant successfully navigated the rigors of confinement during competency restoration. He certainly did not provide substantial cooperation that might cause him to be a target for other offenders. In short, the Defendant's unique characteristics weigh in favor of confinement, not against it.

The evidence has simply demonstrated the Defendant is a significant threat to the community. The danger he poses is clear. The Defendant is an untreated sex offender with a dangerous sexual attraction to young children. Worse yet, the Defendant successfully concealed his sexual interest in children before tragically and forever changing the life of his victim. This history is simply cause for alarm.

At bottom, the Defendant is no different from any ordinary defendant with hopes of capitalizing on the fears associated with the global pandemic. He faces no unique hardship. Extraordinary and compelling reasons must be Extraordinary and compelling, and the Defendant falls far short of that standard. Accordingly, the Court in this indicative ruling **DENIES** request for compassionate release.

## IV. CONCLUSION

Defendant's Motion for Compassion Release is **DENIED**.

Dated this 18th day of August, 2020.

Ronald B. Leighton
United States District Judge